POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT CHOW, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ENOCHIAN BIOSCIENCES INC., MARK DYBUL, LUISA PUCHE, RENÈ SINDLEV, CAROL L. BROSGART, GREGG ALTON, JAMES SAPIRSTEIN, CARL SANDLER, HENRIK GRØNFELDT-SØRENSEN, JAYNE MCNICOL, and EVELYN D'AN, <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Albert Chow ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters,

1

based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Enochian Biosciences Inc. ("Enochian" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Enochian securities between September 24, 2020 and May 31, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Enochian is a pre-clinical stage biotechnology company that purportedly researches and develops pharmaceutical and biological products for the

human treatment of human immunodeficiency virus ("HIV"), hepatitis B virus ("HBV"), influenza and coronavirus infections, and cancer.

3.      Enochian and its top management have credited Serhat Gumrukcu ("Gumrukcu"), Enochian's co-founder and largest shareholder, as a "genius" and the "inventor" of the technology and science behind the Company's product pipeline.

4.      Enochian has multiple consulting and licensing agreements with G-Tech Bio, LLC, a California limited liability company ("G-Tech"), and G Health Research Foundation, a not-for-profit entity organized under the laws of California doing business as Seraph Research Institute ("SRI"), both of which are controlled by Gumrukcu.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Gumrukcu was not a licensed doctor and had no verifiable degrees beyond high school; (ii) accordingly, the scientific and technological underpinnings of Enochian's product pipeline, purportedly invented by Gumrukcu, were dubious at best; (iii) accordingly, the Defendants had significantly overstated the commercial prospects for the Company's product pipeline; (iv) Enochian's senior leadership knew Gumrukcu had a criminal history that included fraud; (v) accordingly, Enochian's reliance on Gumrukcu, and its

consulting and licensing agreements with G-Tech and SRI, subjected the Company to a heightened risk  of reputational and financial harm, as well as threatened the integrity of the Company's scientific findings; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.      On May 25, 2022, the U.S. Department of Justice ("DOJ") announced that Gumrukcu had been arrested and charged in a murder-for-hire conspiracy.

7.      On this news, Enochian's stock price fell $2.17 per share, or 36.97%, to close at $3.70 per share on May 25, 2022.

8.      Then, on June 1, 2022, Hindenburg Research ("Hindenburg") published a report on Enochian entitled "Miracle Cures and Murder For Hire: How A Spoon-Bending Turkish Magician Built A $600 Million Nasdaq-Listed Scam Based On A Lifetime Of Lies" (the "Hindenburg Report").  The Hindenburg Report noted that the individual in whose murder Gumrukcu was implicated, Gregory Davis, "was murdered . . . just 19 days before Gumrukcu was scheduled to appear in court to defend himself against felony fraud allegations related to a 2016 deal with Davis" and that "[f]ederal prosecutors argued that the prospective merger deal that eventually resulted in Enochian going public served as a key motive for the murder."  The Hindenburg Report also stated that "[u]nbeknownst to investors (but known to Enochian's senior leadership) Gumrukcu's latest arrest for a murder conspiracy is simply the most recent in a string of alleged crimes by Gumrukcu," who "was arrested based on accusations of falsely posing as a doctor" in his native

Turkey in 2012 and "[i]n February 2017, Gumrukcu was arrested by authorities after the State of California accused him of a slew of white-collar crimes, including fraud, identity theft, and check kiting – a total of 14 felonies." The Hindenburg Report further stated that "[w]e have been unable to find any jurisdiction in which Gumrukcu is licensed as a medical doctor" and that "Gumrukcu looks to have purchased a fake Russian medical degree on the black market[.]"

9.      On this news, Enochian's stock price fell $1.495 per share, or 28.42%, to close at $3.765 per share on June 1, 2022.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Enochian is headquartered in this Judicial District, Defendants conduct business in this Judicial

District, and a significant portion of Defendants' activities took place within this Judicial District.

14.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

15.    Plaintiff, as set forth in the attached Certification, acquired Enochian securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.    Defendant Enochian is a Delaware corporation with principal executive offices located at 4142 Lankershim Boulevard, North Hollywood, California 91602.  Enochian's common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the trading symbol "ENOB".

17.    Defendant Mark Dybul ("Dybul") has served as Enochian's Chief Executive Officer ("CEO") since July 2021.  Prior to serving as the Company's CEO, Dybul served as Executive Vice-Chair of Enochian's Board of Directors (the "Board") at all relevant times.

18.    Defendant Luisa Puche ("Puche") has served as Enochian's Chief Financial Officer at all relevant times.

19.     Defendant Renè Sindlev ("Sindlev") has served as Enochian's Chairman of the Board at all relevant times.

20.     Defendant Carol L. Brosgart ("Brosgart") has served as a Director of Enochian at all relevant times.

21.     Defendant Gregg Alton ("Alton") has served as a Director of Enochian at all relevant times.

22.     Defendant James Sapirstein ("Sapirstein") has served as a Director of Enochian at all relevant times.

23.     Defendant Carl Sandler ("Sandler") has served as a Director of Enochian at all relevant times.

24.     Defendant Henrik Grønfeldt-Sørensen ("Grønfeldt-Sørensen") has served as a Director of Enochian at all relevant times.

25.     Defendant Jayne McNicol ("McNicol") has served as a Director of Enochian and Chair of Enochian's audit committee since May 2021.

26.     Defendant Evelyn D'An ("D'An") served as a Director of Enochian from before the start of the Class Period to April 2021.  D'An also previously served as the Chair of Enochian's audit committee.

27.     Defendants Dybul, Puche, Sindlev, Brosgart, Alton, Sapirstein, Sandler, Grønfeldt-Sørensen, McNicol, and D'An are sometimes referred to herein as the "Individual Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

28.   The Individual Defendants possessed the power and authority to control the contents of Enochian's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Enochian's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their positions with Enochian, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

29.   Enochian is a pre-clinical stage biotechnology company that purportedly researches and develops pharmaceutical and biological products for the human treatment of HIV, HBV, influenza and coronavirus infections, and cancer.

30.   Enochian and its top management have credited Gumrukcu, Enochian's co-founder and largest shareholder, as a "genius" and the "inventor" of the technology and science behind the Company's product pipeline.

31.     Enochian has multiple consulting and licensing agreements with G-Tech and SRI, both of which are controlled by Gumrukcu.

**Materially False and Misleading Statements Issued During the Class Period**

32.     The Class Period begins on September 24, 2020, the day after Enochian filed an annual report on Form 10-K with the SEC—signed by Defendants Dybul, Puche, Sindlev, Grønfeldt-Sørensen, Sandler, Alton, D'An, Sapirstein, and Brosgart—reporting the Company's financial and operational results for the Company's fourth fiscal quarter and year ended June 30, 2020 (the "2020 10-K"). Among other things, the 2020 10-K represented that "[w]e are a pre-clinical stage biotechnology company committed to using our genetically modified cellular and immune-therapy technologies to prevent or potentially cure HIV, HBV and to potentially provide life-long cancer remission of some of the deadliest cancers[,]" and that "[w]e do this by genetically modifying, or re-engineering, different types of cells, depending on the therapeutic area and then injecting or reinfusing the re-engineered cells back into the patient to provide treatment."

33.     With respect to Gumrukcu's importance to Enochian's product pipeline and business prospects, the 2020 10-K stated, in relevant part, that "[m]any of the techniques utilized in the development of our product candidates have been developed by Dr. Serhat Gümrükcü"; that "we rely on the services of Dr. Gümrükcü, and of [G-Tech] and [SRI], in the continued development of our

pipeline"; and that "[o]ur future performance will depend on our ability to retain the services of Dr. Gümrükcü, [G-Tech] and [SRI]."

34.     With respect to Enochian's consulting agreements with Gumrukcu and G-Tech, and the purported benefits that the Company derived from the transfer of their knowledge, technology, and services for the treatment of HIV, the 2020 10-K stated, *inter alia*:

> On July 9, 2018, the Company entered into a consulting agreement with [G-Tech] to assist the Company with the development of the gene therapy and cell therapy modalities for the prevention, treatment, amelioration of HIV in humans, and with the development of a genetically enhanced Dendritic Cell for use as a wide spectrum platform for various diseases (including but not limited to cancers and infectious diseases) (the "G-Tech Agreement"). G-Tech was entitled to consulting fees for 20 months, with a monthly consulting fee of not greater than $130,000 per month. Upon the completion of the 20 months, the monthly consulting fee of $25,000 continued for scientific consulting and knowledge transfer on existing HIV experiments, and will continue until the services are no longer rendered or the agreement is terminated . . . . For the years ended June 30, 2020 and 2019, $1,125,000 and $1,500,000, respectively, was charged to research and development expenses in our Consolidated Statements of Operations related to this consulting agreement.

35.     The 2020 10-K also stated that "[o]n January 31, 2020, the Company entered into a Statement of Work & License Agreement . . . by and among the Company, G Tech, and [SRI]" and that as a result of this agreement, the Company "acquired a perpetual, sublicensable, exclusive license . . . for a treatment under development . . . aimed to treat [HBV] infections[.]"

36.     Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Dybul and Puche certified that "[t]he [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the [Exchange Act], and" that "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates and for the periods indicated."

37.     On October 28, 2020, Enochian filed an amended annual report on Form 10-K/A with the SEC—signed by Defendants Dybul, Puche, Sindlev, Grønfeldt-Sørensen, Sandler, D'An, Alton, and Brosgart—amending the Company's 2020 10-K, which contained substantively the same statements as referenced in ¶¶ 34-35, *supra*, regarding Enochian's consulting and licensing agreements with G Tech and SRI in connection with the treatment of HIV and HBV.

38.     On September 24, 2021, Enochian filed an annual report on Form 10-K with the SEC—signed by Defendants Dybul, Puche, Sindlev, Grønfeldt-Sørensen, Sandler, Alton, McNicol, Sapirstein, and Brosgart—reporting the Company's financial and operational results for the Company's fourth fiscal quarter and year ended June 30, 2021 (the "2021 10-K"). That filing contained substantively the same statements as referenced in ¶¶ 32-35, *supra*, regarding the use and application of Enochian's purported genetically modified cellular and immune-therapy technologies, Gumrukcu's importance to Enochian's product

11

pipeline and business prospects, and the Company's related consulting and licensing agreements with G Tech and SRI.

39.    The 2021 10-K also discussed Enochian's entry into a consulting a license agreement with G Tech and SRI for the treatment of influenza and coronavirus infections, stating, in relevant part:

On April 18, 2021, the Company entered into a Statement of Work and License Agreement (the "License Agreement"), by and among the Company, G Tech and SRI, whereby the Company acquired a perpetual sublicensable, exclusive license (the "Development License") to research, develop, and commercialize certain formulations which are aimed at preventing and treating pan-coronavirus or the potential combination of the pan-coronavirus and pan-influenza, including the SARS-coronavirus that causes COVID-19 and pan-influenza (the "Prevention and Treatment").

The License Agreement was entered into pursuant to the existing Framework Agreement between the parties dated November 15, 2019. The License Agreement states that in consideration for the Development License, the Company shall provide cash funding for research costs and equipment and certain other in-kind funding related to the Prevention and Treatment over a 24-month period. Additionally, the License Agreement provides for an up-front payment of $10 million and a $760,000 payment for expenditures to date prior to the effective date related to research towards the Prevention and Treatment within 60 days of April 18, 2021. The License Agreement provides for additional payments upon the occurrence of certain benchmarks in the development of the technology set forth in the License Agreement, in each case subject to the terms of the License Agreement.

The License Agreement provides for cooperation related to the development of intellectual property related to the Prevention and Treatment and for a 3% royalty to G Tech on any net sales that may occur under the License Agreement. As of June 30, 2021, the Company paid the $10 million up-front payment, and the $760,000 related to prior research costs.

40.     Additionally, the 2021 10-K discussed Enochian's entry into a patent license and research funding agreement with Gumrukcu for the treatment of HIV, stating, in relevant part:

> On August 25, 2021, the Company entered into an ALC Patent License and Research Funding Agreement in the HIV Field (the "ALC License Agreement") with Dr. Gumrukcu and SRI whereby Dr. Gumrukcu granted the Company an exclusive, worldwide, perpetual, fully paid-up, royalty-free license, with the right to sublicense, his proprietary technology subject to a U.S. patent application, to make, use, offer to sell, sell or import products for use solely for the prevention, treatment, amelioration of or therapy exclusively for HIV in humans, and research and development exclusively relating to HIV in humans; provided Dr. Gumrukcu retained the right to conduct HIV research in the field . . . . The Company made an initial payment to SRI of $600,000 and agreed to fund future HIV research conducted by Dr. Gumrukcu and SRI, as mutually agreed to by the parties. Our current product candidate under this license is ENOB-HV-21: HIV Natural Killer and Gamma Delta T Cell Treatment or Cure.

41.     In addition, the 2021 10-K stated that "[o]ur co-founder and inventor, Dr. Serhat Gumrukcu, who is also the Director of [SRI], submitted [a] Pre-IND [Investigational New Drug application] for ENOB-HV-21 an innovative treatment of Natural Killer (NK) and Gamma Delta T-Cells (GDT) collected from another person" for the treatment of HIV; that "[i]t is believed that the GDT cells, a small subset of immune cells that can be infected with HIV, could be a key factor in controlling the virus"; and that "Enochian BioSciences has an exclusive license to use the underlying patent to develop HV-21 for the prevention, treatment, and/or amelioration of and/or therapy exclusively for HIV in humans, and research and development exclusively relating to HIV in humans."

13

42.    Appended as exhibits to the 2021 10-K were substantively the same SOX certifications as referenced in ¶ 36, *supra*, signed by Defendants Dybul and Puche.

43.    On October 28, 2021, Enochian filed an amended annual report on Form 10-K/A with the SEC—signed by Defendants Dybul and Puche—amending the Company's 2021 10-K, which contained substantively the same statements as referenced in ¶¶ 34-35 and 39, *supra*, regarding Enochian's consulting and licensing agreements with G Tech and SRI.

44.    The statements referenced in ¶¶ 32-43 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Gumrukcu was not a licensed doctor and had no verifiable degrees beyond high school; (ii) accordingly, the scientific and technological underpinnings of Enochian's product pipeline, purportedly invented by Gumrukcu, were dubious at best; (iii) as such, the Defendants had significantly overstated the commercial prospects for the Company's product pipeline; (iv) Enochian's senior leadership knew Gumrukcu had a criminal history that included fraud; (v) accordingly, Enochian's reliance on Gumrukcu, and its consulting and licensing agreements with G-Tech and SRI, subjected the Company to a heightened risk  of reputational and financial harm, as well as threatened the

14

integrity of the Company's scientific findings; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

### **The Truth Begins to Emerge**

45.    On May 25, 2022, the DOJ issued a press release announcing that Gumrukcu had been arrested and charged in a murder-for-hire conspiracy, stating, in relevant part:

> The Office of the United States Attorney for the District of Vermont stated that Serhat Gumrukcu, 39, of Los Angeles, California . . . w[as] arrested yesterday after having been charged by a federal grand jury in Vermont with conspiring to use interstate commerce facilities in the commission of murder-for-hire which resulted in the death of Gregory Davis, a resident of Danville, Vermont.
>
> Gumrukcu is expected to appear later today in the United States District Court for the Central District of California.
>
> * * *
>
> If convicted, Gumrukcu . . . face[s] mandatory life in prison or the death penalty.

46.    On this news, Enochian's stock price fell $2.17 per share, or 36.97%, to close at $3.70 per share on May 25, 2022.  Despite this decline in the Company's stock price, Enochian securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misrepresentations and omissions regarding Gumrukcu's credentials and criminal history, and the attendant risks to Enochian's product pipeline, business prospects, and reputation.

15

47.     For example, also on May 25, 2022, during after-market hours, Enochian issued a press release acknowledging Gumrukcu's criminal charges, stating, *inter alia*, that "[t]he Board has verified that the incident leading to the arrest occurred prior to the merger which created the Enochian of today, and is completely unrelated to the Company"; that "[t]he Board reviewed the important scientific discoveries of the inventor and the Company's rights with regards to those discoveries, which will be unchanged"; that "[t]he Board confirmed that . . . Gumrukcu has had no formal role in the Company, and has no involvement with the Company's strong management, scientific team and collaborations with leaders in the field"; and that, "[t]herefore, the Board strongly affirms its confidence in the Company's promising future[.]"

48.     The same May 25, 2022 press release also stressed the Board's "unanimous and strong affirmation of the current position of the Company, the Management and the promising advancement of the Research and Development pipeline[,]" which "follows the unexpected and shocking press release by the [DOJ,]" and that "[t]he Board reviewed what is known and concluded without reservation that there is no link between the criminal charges and any actions of the Company."

49.     Enochian's May 25, 2022 press release also quoted Defendant Dybul, who stated, in relevant part:

The profound potential of the scientific ideas, and the promising pre-clinical and in certain cases clinical data have not changed. We are fully committed to advancing, and in fact, accelerating, the development of potential commercial products that could potentially save and lift-up many millions of lives. The personal life of the inventor and co-founder does not alter those fundamental facts. Indeed, there has never been a formal role for Dr. Gumrukcu in the Company and his remaining informal role as a scientific advisor has concluded.

50.     The statements referenced in ¶¶ 47-49 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Gumrukcu was not a licensed doctor and had no verifiable degrees beyond high school; (ii) the scientific and technological underpinnings of Enochian's product pipeline, purportedly invented by Gumrukcu, were dubious at best; (iii) accordingly, the Defendants had significantly overstated the commercial prospects for the Company's product pipeline; (iv) Enochian's senior leadership knew Gumrukcu had a criminal history that included fraud; (v) as such, Enochian's reliance on Gumrukcu, and its consulting and licensing agreements with G-Tech and SRI, subjected the Company to a heightened risk  of reputational and financial harm, as well as threatened the integrity of the Company's scientific findings; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Fully Emerges

51.     On June 1, 2022, Hindenburg published a report on Enochian entitled "Miracle Cures and Murder For Hire: How A Spoon-Bending Turkish Magician Built A $600 Million Nasdaq-Listed Scam Based On A Lifetime Of Lies."  The Hindenburg Report noted that the individual in whose murder Gumrukcu was implicated, Gregory Davis, "was murdered . . . just 19 days before Gumrukcu was scheduled to appear in court to defend himself against felony fraud allegations related to a 2016 deal with Davis" and that "[f]ederal prosecutors argued that the prospective merger deal that eventually resulted in Enochian going public served as a key motive for the murder."  The Hindenburg Report also stated that "[u]nbeknownst to investors (but known to Enochian's senior leadership) Gumrukcu's latest arrest for a murder conspiracy is simply the most recent in a string of alleged crimes by Gumrukcu."

52.     For example, the Hindenburg Report detailed how Gumrukcu "was arrested based on accusations of falsely posing as a doctor" in his native Turkey in 2012, with criminal charges still pending after Gumrukcu "fled Turkey despite an outstanding arrest warrant."  The Hindenburg Report also detailed how "[i]n February 2017, Gumrukcu was arrested by authorities after the State of California accused him of a slew of white-collar crimes, including fraud, identity theft, and check kiting – a total of 14 felonies[,]"  and that "on January 25, 2018, Gumrukcu . . . pled guilty to one felony count of Second-Degree Commercial Burglary, per

18

correspondence with California AG[,]" with Gumrukcu "placed on formal probation for 5 years." When Hindenburg staff questioned Enochian's Chairman, Defendant Sindlev, regarding whether he knew of Gumrukcu's U.S. criminal history as far back as in 2018, Defendant Sindlev reportedly responded "[w]e did" and "[w]hen asked why it was never disclosed to investors, Sindlev said court records are public." Moreover, according to the Hindenburg Report, "Enochian's former CFO is currently embroiled in an undisclosed lawsuit with Enochian's leadership, claiming he was fired for asking 'critical questions' about 'serious financial improprieties' and large payments to Gumrukcu, and for questioning the company's close association with an individual accused of numerous felonies."

53.     The Hindenburg Report further stated that "[w]e have been unable to find any jurisdiction in which Gumrukcu is licensed as a medical doctor" and that "Gumrukcu looks to have purchased a fake Russian medical degree on the black market," which is particularly troubling given that "[e]very product Enochian is investigating appears to have been licensed to it by Gumrukcu-controlled or affiliated entities or are otherwise based on his research." The Hindenburg Report found that Gumrukcu "is unlicensed in California, where he has apparently been practicing medicine anyway, and where he has claimed to have made his major breakthroughs for Enochian." The Hindenburg Report also found that, despite "Gumrukcu['s] claims to have spent 12+ years earning an M.D. and multiple PhDs in Russia and Turkey[,]" after contacting the schools Gumrukcu purportedly earned

those degrees from, it appears that "he made it all up" and, indeed, "admitted to [Turkish] police that his highest level of education was a high school degree, despite the arrest taking place *after* the period where Gumrukcu claimed to have already been a doctor" (emphasis in original).

54.     In addition, the Hindenburg Report found that "[d]espite the company's claims that top scientists are still behind the research, many are already backing away."  For example, the Hindenburg Report cited "[a]n international cancer doctor that Gumrukcu claimed was his mentor" who "told us a picture of him on the website for Gumrukcu's research entity, [SRI], is a fake: 'I never wore a Seraph coat. It's a forgery.' 'I never wore (a) Seraph coat as shown in the picture, so how could I validate his science?'"  The Hindenburg Report also cited "[a] world-renowned microbiologist who briefly served on Enochian's Scientific Advisory Board and was previously quoted by Enochian as saying he was 'blown away' by Gumrukcu's 'brilliant creativity'" who told Hindenburg: "I agree retrospectively I should have done some due-diligence" and that, regarding the validity of the science, "I have never validated anything, and they should not use my name."  Likewise, the Hindenburg Report cited a former Enochian senior executive that told Hindenburg "I left because I lost scientific trust in what [Gumrukcu] was promoting . . . I had a few facts that corroborated that he lied to me and when scientists start to lie a little bit and massage the data, then I am afraid to have another Elizabeth Holmes story" (alteration and omission in original).

55.     Following publication of the Hindenburg Report, Enochian's stock price fell $1.495 per share, or 28.42%, to close at $3.765 per share on June 1, 2022.

56.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### Post-Class Period Developments

57.     On July 1, 2022, Enochian issued a press release announcing findings from an internal review of the scientific data backing its product pipeline.  That press release stated, in relevant part:

> In recent days, Enochian . . . has conducted a rigorous internal review of scientific data to give partners and investors a clear understanding of the Company's pipelines.

> * * *

> [D]uring the review, the Company discovered that former scientific advisor Serhat Gumrukçu altered two different sets of animal data generated by third-party research institutions before Enochian's scientists had a chance to review. One data set was for an inhaled COVID-19 treatment study while the other was for an HBV therapy study. As a result, the Company will initiate legal action against Gumrukçu over the falsified data.

> While the investigation verified the source and scientific foundation of the HIV and cancer pipelines, and certain data from the COVID-19 and HBV pipelines, the Company is extremely concerned and disappointed to learn that non-clinical data for those two pipelines were altered. The Company is evaluating its internal controls regarding the review and verification of external scientific data and will modify as appropriate.

21

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

58.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Enochian securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

59.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Enochian securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Enochian or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

60.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

61.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Enochian;

- whether the Individual Defendants caused Enochian to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Enochian securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

63.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members

may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

64.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Enochian securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Enochian securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

65.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

66.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens*

24

*of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

67.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

68.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

69.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and

maintain the market price of Enochian securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Enochian securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

70.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Enochian securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Enochian's finances and business prospects.

71.     By virtue of their positions at Enochian, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In

addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

72.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Enochian, the Individual Defendants had knowledge of the details of Enochian's internal affairs.

73.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Enochian.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Enochian's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Enochian securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Enochian's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Enochian securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

74.    During the Class Period, Enochian securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Enochian securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Enochian securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Enochian securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

75.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

28

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

77.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     During the Class Period, the Individual Defendants participated in the operation and management of Enochian, and conducted and participated, directly and indirectly, in the conduct of Enochian's business affairs.  Because of their senior positions, they knew the adverse non-public information about Enochian's misstatement of income and expenses and false financial statements.

79.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Enochian's financial condition and results of operations, and to correct promptly any public statements issued by Enochian which had become materially false or misleading.

80.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Enochian disseminated in the marketplace during the Class Period concerning Enochian's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Enochian to engage in the wrongful acts complained of herein.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The Individual Defendants, therefore, were "controlling persons" of Enochian within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Enochian securities.

81.    Each of the Individual Defendants, therefore, acted as a controlling person of Enochian.  By reason of their senior management positions and/or being directors of Enochian, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Enochian to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Enochian and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

82.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Enochian.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  July 26, 2022                    Respectfully submitted,

                                        POMERANTZ LLP

                                        */s/ Jennifer Pafiti*
                                        Jennifer Pafiti (SBN 282790)
                                        1100 Glendon Avenue, 15th Floor
                                        Los Angeles, California 90024
                                        Telephone: (310) 405-7190
                                        jpafiti@pomlaw.com

                                        PORTNOY LAW FIRM
                                        Lesley F. Portnoy, Esq.
                                        1800 Century Park East, Suite 600
                                        Los Angeles, California 90067
                                        Telephone: (310) 692-8883
                                        lesley@portnoylaw.com

                                        *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS